IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| ROBERT P. HOOPES | : | No. 16-509-02 |

**MEMORANDUM**

PRATTER, J.                                                                                                    NOVEMBER 23, 2020

Defendant Robert P. Hoopes seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The primary basis for his motion is the COVID-19 pandemic and attendant conditions relating to the pandemic as they may affect Mr. Hoopes. The Government opposes Mr. Hoopes's motion. For the following reasons, the Court denies the motion.

### BACKGROUND

**I.    Mr. Hoopes's Criminal Conduct**

In September 2018, pursuant to a written plea agreement, Mr. Hoopes pled guilty to one count of conspiracy to commit money laundering (Count One), in violation of 18 U.S.C. § 1956(h), and four counts of extortion in violation of the Hobbs Act (Counts Nine, Thirteen, Fifteen, and Nineteen), 18 U.S.C. § 1951. (Doc. No. 207 at 2.) Mr. Hoopes's corruption offenses demonstrate a pervasive abuse of power as a law enforcement officer and public servant. Mr. Hoopes was the former Director of Public Safety in Lower Southampton Township and a lawyer. He used his position to extort businesses, corrupt public institutions, and benefit himself. He also engaged in money laundering whereby he tried to help those who he believed to be criminals conceal the proceeds of fraud and drug trafficking. (Doc. No. 207 at 3.)

1

In June 2019 the Court sentenced Mr. Hoopes to 54 months in prison. Mr. Hoopes is currently serving his sentence at FCI Cumberland Camp, with an anticipated release date of July 2023. (Doc. No. 207 at 2.) He has served approximately 14 months and has credit for good conduct time of approximately 2 months. (Doc. No. 207 at 2-3.)

## II.     Mr. Hoopes's Request for Compassionate Release

In March 2020 Mr. Hoopes emailed the facility's warden requesting compassionate release to home confinement due to his age, (73 years old) and a compromised immune system. (Doc. No. 207 at 8.) His request was denied. Mr. Hoopes now seeks the same requested relief from this Court on the same grounds. According to his BOP medical records, Mr. Hoopes was diagnosed with polymyalgia rheumatica and prediabetes. He is also obese. (Doc. No. 207 at 8.) His conditions currently appear well-controlled with medication provided by the institution. Mr. Hoopes is otherwise fully ambulatory and able to engage in all normal activities of daily life. (Doc. No. 207 at 8.) Mr. Hoopes notes that he also has rheumatoid arthritis. (Doc. No. 204 at 3.)

Mr. Hoopes seeks compassionate release due to the higher risk of severe illness or death these conditions represent should he contract COVID-19. (Doc. No. 204 at 3.)

## III.    BOP's Response to the COVID-19 Pandemic

BOP's "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[1] and it has taken significant measures to protect the health of the inmates in its charge. Indeed, BOP has had a Pandemic Influenza Plan in place since 2012.[2] The protocol established a phased framework which requires BOP facilities to begin preparations in

---

[1]   BOP, *BOP Modified Operations* (last updated Oct. 8, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Nov. 18, 2020).

[2]   BOP HEALTH SERVICES DIVISION, *Pandemic Influenza Plan-Module 1: Surveillance and Infection Control* (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (last visited Nov. 18, 2020).

2

the face of a suspected outbreak overseas and further addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. BOP began planning for potential COVID-19 transmissions as early as January 2020, during the same time in which it established a working group to develop COVID-19 policies. In accordance with the Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmissions almost nine months ago, in March of this year.

Presently, BOP operations are governed by Phase Nine of the Action Plan. The current modified operations plan permits only limited group gathering, with attention to social distancing efforts to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. BOP has limited the movement of inmates and detainees among its facilities. Moreover, official staff travel has been suspended, as has most in-person staff training. BOP is endeavoring to regularly issue face masks to all staff and inmates, and strongly encourages masks to be worn in public areas where social distancing cannot be achieved.

Inmates who travel outside of a BOP institution, such as for court appearances, are to be quarantined upon their return. Newly admitted inmates are screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates are placed in quarantine for at least 14 days or until cleared by medical staff. Symptomatic inmates are placed in medical isolation until they test negative for COVID-19 or are cleared by medical staff as meeting the CDC criteria for release from isolation. The Program Review Division will conduct unannounced site visits to ensure compliance with the Health Services Division and the CDC's guidance.

As directed by the Attorney General, BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[3] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020 the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that have seen the greatest incidence of COVID-19 transmission thus far.

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices accordingly to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders. Thus far, BOP's efforts at FCI Cumberland Camp have been among the most successful in the BOP system. The institution currently houses 1,096 total inmates, 145 of whom are in the camp portion of the facility where Mr. Hoopes is housed. There is currently[4] one COVID-positive inmate and six COVID-positive staff members; since March, seven inmates and ten staff members have recovered from COVID-19.

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d

---

[3] This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement.

[4] The data is current as of November 23, 2020, according to the BOP website, available at https://www.bop.gov/coronavirus.

4

Cir. 2007). However, a defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf,[5] which can only occur after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[6] a court may reduce his or her term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with the Sentencing Commission's applicable policy statements,[7] and that the § 3553(a) factors favor reduction. Pursuant to the Sentencing Commission's relevant policy statement, a court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the conjunctive term. Application Note 1 provides, in pertinent part, that a defendant's non-terminal illness may constitute an extraordinary and compelling

---

[5] "The recently enacted First Step Act allows 'incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons.'" *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (quoting *United States v. Mark*, No. 10-cr-742-1, 2020 WL 5801495, *1 (E.D. Pa. Sept. 29, 2020)).

[6] The Government concedes that Mr. Hoopes has met the exhaustion requirement and the Court agrees. (Doc. No. 207 at 8.)

[7] Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

justification where "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *see also United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

## DISCUSSION

The Court certainly does not minimize the critical health risk posed by COVID-19. But as concerning as the current pandemic is, resolving Mr. Hoopes's motion still calls upon the Court to take into serious consideration the limits imposed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Hoopes argues that he should be immediately released given his age and underlying health conditions. Although COVID-19 is a dangerous, and sometimes lethal, virus for all individuals, the Centers for Disease Control and Prevention (CDC) has deemed certain people with specific underlying medical conditions and older adults to be at a heightened risk of severe illness or death.[8]

---

[8]  *See People at Increased Risk*, Centers for Disease Control and Prevention (Sept. 11, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited November 19, 2020).

"While this court is not bound by the CDC's guidelines, it follows suit with many other district courts who have turned to the guidance as reliably informative." *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

But for COVID-19, Mr. Hoopes would likely present no basis at all for compassionate release. However, given the COVID-19 pandemic, Mr. Hoopes contends that his polymyalgia rheumatica, rheumatoid arthritis, and obesity present serious at-risk conditions. (Doc. No. 204 at 3-4.) Due to these conditions, Mr. Hoopes asserts that he is immunocompromised; he also mentions that he was a former smoker, is prediabetic, and takes medication which suppresses his immune system. The Government concedes that Mr. Hoopes does have some conditions that place him at a greater risk of complications were he to contract COVID-19.[9] These include his age, obesity, status as a former smoker, and the fact that the medication he takes for a potential autoimmune disease can also compromise one's immune system. However, these medical issues do not necessarily, actually or theoretically warrant the emergency relief Mr. Hoopes requests in certain circumstances.

For instance, while type 2 diabetes is a risk factor, prediabetes is not. *See United States v. Rae*, No. 15-cr-432, 2020 WL 4544387, at *4 (E.D. Pa. Aug. 6, 2020) ("Pre-diabetes, however, is not listed by the CDC as a condition that increases the risk of COVID-19 complications."). Furthermore, while the CDC identifies obesity as a body mass index of 30 or greater as presenting a risk,[10] given Mr. Hoopes's height and weight, he is just barely above that threshold. (Doc. No. 204 at 13.) Courts have generally denied compassionate release based on mild obesity. *See United*

---

[9] The Government acknowledges that Mr. Hoopes meets the threshold of a medical condition as described in Application Note 1. U.S.S.G. § 1B1.13.

[10] *People with Certain Medical Conditions*, Centers for Disease Control and Prevented (Nov. 2, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 19, 2020).

7

*States v. Williams*, No. 15-cr-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (noting that moderate asthma and mild obesity are not extraordinary circumstances in the context of institution with low number of positive cases). As to his age, Mr. Hoopes is 73 years old. While the risk for severe illness from COVID-19 increases with age, the CDC notes that the "greatest risk" is among those aged 85 or older.[11]

While Mr. Hoopes's health concerns do place him at a higher risk for complications, he has been receiving adequate care at his institution and there has been no significant COVID-19 outbreak there. His current conditions are well-controlled with medication and he does not present any impediment to his ability to provide self-care in the institution. (Doc. No. 207 at 16.) While Mr. Hoopes portrays the prison situation as dire and one where he will almost certainly contract COVID-19, the facts show that, since the start of the pandemic, seven FCI Cumberland inmates who contracted the virus have recovered. There is currently one inmate and six staff members with active COVID-19 cases at FCI Cumberland. Although the Court does not trivialize the seriousness of Mr. Hoopes's health conditions, such ailments, coupled with the present conditions at FCI Cumberland, do not represent extraordinary and compelling reasons which justify compassionate release. The Court is confident that Mr. Hoopes's medical conditions are appropriately managed at FCI Cumberland, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would also act to treat any inmate who does contract COVID-19. Thus far the facility has also treated any inmate or staff member who contracted COVID-19 and has remained transparent with the community about positive cases. (Doc. No. 207 at 21.)

---

[11] *Older Adults*, Centers for Disease Control and Prevention (Sept. 11, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 19, 2020).

8

Even if Mr. Hoopes presented an extraordinary and compelling reason that warranted his compassionate release, the Court's consideration of the § 3553(a) factors necessitate a denial of Mr. Hoopes's motion. Mr. Hoopes has failed to show how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors, notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. *See* 18 U.S.C. § 3553(a). While not of a violent nature, Mr. Hoopes's criminal conduct involved a money laundering conspiracy, multiple acts of extortion under color of law, and an abuse of his position as a law enforcement officer for personal gain. Despite his underlying medical conditions, these crimes were serious and an early release would not provide just punishment or serve as a deterrent to others. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (noting district court reasonably concluded early release not warranted where defendant's "crimes were extraordinarily serious," involved an "abuse of a position of public trust," and required "a significant period of incarceration").

Mr. Hoopes has also not served the bulk of his sentence. Accounting for his credit for good conduct, he has only served approximately 16 months, or not quite 30%, of his 54-month sentence. An early release would be contrary to the § 3553(a) factors. *See United States v. Hasan-Hafez*, No. 16 CR. 221-2 (KPF), 2020 WL 2836782, at *5 (S.D.N.Y. June 1, 2020) ("It would undercut the § 3553(a) factors for the Court to allow [defendant] to serve just 13 months of a 45-month sentence.").

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Hoopes's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE